UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| CHRISTOPHER SARAO,<br><br>Plaintiff,<br><br>v.<br><br>GRACE BAILEY NAVIGATION COMPANY, INC., In Personam, and the SCHOONER GRACE BAILEY, Official No. 085754, her tackle, apparel, and appurtenances, In Rem,<br><br>Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | CIVIL ACTION<br><br>DOCKET NO.: |

**VERIFIED COMPLAINT**
**ADMIRALTY AND MARITIME CLAIMS – FED. R. CIV. P. 9(h)**

Plaintiff Christopher Sarao, through counsel, alleges as follows:

NATURE OF THE ACTION

1. This action arises from the collapse of a wooden mast aboard the schooner Grace Bailey on October 9, 2023. Falling and shifting spars struck Plaintiff while he was a passenger aboard the Vessel on navigable waters near Rockland, Maine, causing serious and permanent injuries.

THE PARTIES

2. Plaintiff Christopher Sarao resides in Lubec, Maine.

3. Defendant Grace Bailey Navigation Company, Inc. (the "Company") is a corporation organized under the laws of the State of Maine. On information and belief, at the time of the casualty, the Company owned and operated the Grace Bailey and was responsible for her inspection, maintenance, repair, and passenger operations from Rockland, Maine.

4. Defendant Schooner Grace Bailey (the "Vessel"), Official No. 085754, is a wooden sailing vessel constructed in 1882 and operated for the carriage of passengers for hire. This action is pursued in rem, together with her tackle, apparel, and appurtenances.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1333(1). Plaintiff designates these claims as admiralty and maritime claims under Federal Rule of Civil Procedure 9(h).

6. The casualty occurred aboard a vessel on navigable waters during a passenger voyage. The collapse of a mast during such a voyage has the potential to disrupt maritime commerce, and the maintenance and operation of a sailing vessel carrying passengers bear a substantial relationship to traditional maritime activity.

7. The Company is subject to personal jurisdiction in Maine because it is incorporated in Maine; these claims arise from its maintenance and operation of the Vessel in Maine; and its carriage of Plaintiff on a voyage departing from and returning to Maine. Venue is proper under the principles governing admiralty actions because the Company is subject to suit and service in this District and the casualty arose from those Maine operations.

8. Based on the Vessel's advertised passenger operations from Rockland, Maine—including published Maine cruise schedules for 2026 and 2027—Plaintiff alleges, on information and belief, that the Vessel will be within this District during the pendency of this action.

## FACTUAL ALLEGATIONS

### *The Voyage and Mast Failure*

9. Plaintiff was a paying passenger on a voyage scheduled to depart from and return to Rockland, Maine. He and his wife, Diane, boarded on October 5, 2023. The Vessel sailed on

October 6 and was returning toward Rockland on October 9 when the casualty occurred.

10. The wooden mainmast broke and fell, bringing down associated spars and rigging. Plaintiff was struck and injured in the casualty and was later evacuated for emergency treatment at Pen Bay Medical Center.

11. While Mr. Sarao was assisting injured passengers after the collapse, a fallen spar shifted and struck his forehead. He attempted to hold it away and called for it to be tied off. It shifted again and struck him while he continued assisting another injured passenger.

12. On information and belief, before the voyage the mainmast contained extensive internal wood decay that weakened its structure and created a risk of failure during ordinary sailing operations.

13. On information and belief, the Company's crew inspections of the masts relied on visual observations without sounding hammers or probing tools, and the crew member assigned those inspections lacked specific training in mast or wood inspection. The Company did not provide a reasonably adequate inspection program to assess the mainmast's structural condition.

14. On information and belief, before the casualty voyage, the Company had obtained a pre-purchase survey identifying rot in the Vessel's separate foremast and had undertaken repairs to that mast. Despite that history of deterioration in the Vessel's wooden masts, the Company did not employ inspection methods reasonably adequate to assess internal deterioration in the mainmast.

15. On information and belief, the mainmast's decay developed over time and substantially weakened the mast before the casualty. The Company knew or, through reasonable inspection and maintenance under the circumstances, should have known of the dangerous condition in time to address it before carrying Plaintiff on the voyage.

16. The Company permitted the Vessel to sail with the deteriorated mainmast in service.

*Injuries and Treatment*

17. Before the casualty, Mr. Sarao had preexisting a spinal condition but remained active and independent in his daily activities. The impacts caused new injuries and aggravated or accelerated his preexisting conditions, resulting in persistent spinal, left hip, and left lower-extremity pain and functional limitations.

18. Plaintiff required medical evaluation, physical therapy, injections, and other pain treatment. His left hip condition required a total left hip arthroplasty on May 28, 2025.

19. During surgical treatment for the hip condition caused or aggravated by the casualty, Plaintiff sustained a pressure injury and related complications requiring additional medical and wound care.

20. Plaintiff continues to experience pain, sleep disruption, reduced mobility, and limitations in daily and recreational activities, including boating and sailing. His injuries have caused permanent impairment and will require future medical care.

<u>COUNT I — MARITIME NEGLIGENCE</u>
*(As to the Company in personam)*

21. Plaintiff incorporates Paragraphs 1 through 20.

22. The Company owed Plaintiff a duty to exercise reasonable care under the circumstances in inspecting, maintaining, repairing, and operating the Vessel and in protecting passengers from dangerous conditions of which it knew or reasonably should have known, including fallen spars after the collapse.

23. The Company breached that duty by failing to reasonably inspect the mainmast for decay and structural deterioration; failing to provide reasonably adequate training and supervision

to personnel assigned to inspect the masts; failing to repair or replace the weakened mainmast; and continuing passenger operations with the mainmast in an unsafe condition.

24. The Company further breached its duty by failing to reasonably secure fallen spars after the collapse, allowing a spar to shift and strike Plaintiff while he assisted injured passengers.

25. The Company is responsible for the negligence of its master and crew committed within the scope of their employment or agency in maintaining the Vessel and responding to the collapse.

26. The Company's failures allowed the decayed mainmast to remain in service and collapse during the voyage and fallen spars to cause further impacts. Its negligence was a factual and proximate cause of these impacts and Plaintiff's resulting injuries, aggravation of preexisting conditions, and consequential treatment injuries.

27. Plaintiff has suffered the damages described below as a result of the Company's negligence.

28. As a result of the casualty, Plaintiff has incurred reasonable medical and related treatment expenses and will incur future expenses for care reasonably required by his injuries, including treatment of the conditions aggravated by the casualty and resulting treatment complications.

29. Plaintiff has suffered and will continue to suffer physical pain, emotional distress, loss of enjoyment of life, and permanent impairment and disability. He seeks compensatory damages in an amount to be established by the evidence.

COUNT II — ENFORCEMENT OF MARITIME TORT LIEN
*(As to the Vessel in rem)*

30. Plaintiff incorporates Paragraphs 1 through 29.

31. The maritime tort described above, arising from the negligent maintenance and operation of the Vessel and causing Plaintiff's injuries aboard her, gives rise to a maritime tort lien against the Vessel.

32. Plaintiff seeks to enforce that lien against the Vessel in rem under Supplemental Rule C and to recover the amount secured by the lien from the Vessel or substitute security, without duplicative recovery. Pursuant to Supplemental Rule E(3)(b), Plaintiff requests that issuance and delivery of process in rem be held in abeyance pending his further application. Plaintiff maintains his claim against the Vessel in rem and reserves the right to seek arrest and substitute security in accordance with Supplemental Rules C and E.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court:

A. Enter judgment against the Company in personam for compensatory damages in an amount established at trial;

B. Recognize and enforce Plaintiff's maritime tort lien and enter judgment against the Vessel in rem or her substitute security, without duplicative recovery;

C. Hold issuance and delivery of process in rem in abeyance under Supplemental Rule E(3)(b), subject to Plaintiff's subsequent application for arrest and other appropriate relief under Supplemental Rules C and E;

D. Award prejudgment interest, post-judgment interest, and taxable costs as allowed by law; and

E. Grant such other relief as is just and proper.

VERIFICATION

I, Christopher Sarao, declare under penalty of perjury that I have read the foregoing Verified Complaint and that the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief.

Executed on October 2, 2026

*/s/ Christopher J. Sarao*
Christopher J. Sarao

Date: October 2, 2026

*/s/ Trevor D. Savage, Esq.*
Trevor D. Savage, Esq.
Sean P. Murphy, Esq.
*Attorneys for Plaintiff*

Gideon Asen LLC
95 Main Street, # 5
Auburn, ME 04210
(207) 206-8982
*tsavage@gideonasenlaw.com*
*smurphy@gideonasenlaw.com*